Amy Day on behalf of the appellant, Mr. Randall Abraugh, who is the decedent, and then the plaintiffs in this case would be his surviving mother, spouse, and daughter.  There are three issues presented for review to this court, two of which deal with the issue of standing, and then one deals with the issue of whether an amended complaint relates back to an originally filed complaint. I believe that the issue of standing, these cases are very fact-sensitive, so just briefly, Mr. Randall Abraugh died as a result of injuries sustained while he was in custody at Bossier Parish Maximum Security Facility on March 4th, 2019. On February 25th, 2020, a suit was filed by Karen Abraugh, who was Mr. Abraugh's mother, both individually and on behalf of the estate. Within that complaint, she specifically asserted her wrongful death and survival actions and negligence claims on behalf of all survivors and noted that Mr. Abraugh was survived by his wife, Ms. Kelsey Abraugh. Defendants at that time filed multiple motions to dismiss, which raised the issue of standing. I think it's notable that after prescription had expired, Ms. Abraugh sought leave of court to amend the complaint to address the issues raised by the defendant's motions to dismiss. The district court granted leave to amend and file a second amended complaint, which Ms. Abraugh did. She specifically named Ms. Abraugh's minor daughter and Kelsey Abraugh as plaintiffs in that case. Then the third amended complaint was filed in August of 2022, which just substituted the minor child's biological mother on her behalf. The defendants then refiled their motions to dismiss, asserting that the claims were time-barred and that Karen Abraugh lacked standing to pursue the claims. Would you do an aside and quickly distinguish between Article III standing and prudential standing? Yes, Your Honor, I would be happy to. Article III standing is where the court gains jurisdiction over a case and controversy, which in this case, I believe, and this Court's ruling in Nobre was gained in this case based on the fact that the plaintiff originally named all survivors and specifically named Ms. Kelsey Abraugh in the petition. I think the appellees have focused a lot on the fact that the newly added plaintiffs, both Ms. Kelsey Abraugh and the minor child, were not named in either the party section or within the caption of the original or first amended complaint. I think that in this case, we know that the caption is not necessarily dispositive of the parties, and I think that sufficient notice was provided by naming Kelsey Abraugh both within the complaint and then seeking to amend to name her within that caption and within the party section. Well, that's enlightening, but I didn't hear the difference between Article III standing and prudential standing. I apologize, Your Honor. Article III standing is the case or controversy standing, which I believe we have here. I don't think that we need to get to prudential standing in this case. I believe that we have met the conditions for Article III standing. It was your point that Karen Abraugh has Article III standing. The problem is she's not the real party in interest, but that's okay because you can always bring in Kelsey Abraugh under our NOBRA precedent. That's correct, Your Honor. Yes, that is our position on the first two issues here, is that under this case is very, very similar to NOBRA. In that case, there was an original complaint filed after the running of prescription, a motion for leave to add the two minor children in place of the mother who was the original plaintiff, was granted by the district court. The same thing happened in this case. We have an original complaint filed by the decedent's mother. Prescription runs and then a motion for leave to add a spouse and a minor child who were within that same category of classifications under Louisiana's wrongful death and survival statutes. I just want to make sure I'm following you. Yes, Your Honor. Saying that Karen Abraugh has Article III standing or it doesn't matter that she does not because she can amend to add the real party in interest to the surviving spouse, which one are you saying? You're saying it doesn't matter that she doesn't have Article III or you think she has Article III? Yes, Your Honor. We're saying that she has Article III standing, but even if she did not, we believe that she could still amend the claim to substitute those parties in. Okay, and you're relying on NOBRA for the proposition that she has Article III standing. Is that what you're saying? We're relying on the proposition that she was, Kelsey Abraugh, was named within the petition, that original petition that was filed prior to the running of prescription. Even though she was not named within the caption, we take the position that because she was named within the body of the complaint, that that was sufficient to confer standing upon her. On her who? Kelsey Abraugh, who was the surviving spouse. All right, so Karen didn't have, doesn't have Article III standing. Karen would not, but we believe that the complaint, the original complaint was sufficient to, I'm sorry if I, that was not clear enough, Your Honor. I apologize. I'm sorry, I am confused now. Just to clarify, I think what you're saying is Karen Arbaugh has to the extent that there is a real party and interest problem, she can use NOBRA to bring in Kelsey. We're. I think that's what we said in NOBRA. Yes, that's, we bring in NOBRA under the second part. If this Court were to find. You're arguing the alternative. Yes. On the off chance that somebody thinks Karen Arbaugh, despite being the mother, has no standing, fine, you can use NOBRA anyway. Yes. I think your core point is, of course she has standing, she's the mother, Article III standing. To the extent that there's a real party and interest problem, you can always add somebody later through Rule 15 through Rule 17 under NOBRA. That is correct, Your Honor. And I think going back to NOBRA, you know, it is notable that in that case, as well as in this case, there was a motion for leave filed to add the children and or surviving spouse after the running of prescription and that was granted by the District Court in this case with notice from those first round of motions to dismiss that standing was an issue. The District Court went ahead, granted that motion for leave to amend and then in NOBRA in the first amended complaint added the two children. In this case, it was the second amended complaint adding the spouse and the surviving child. And then just briefly, Your Honors, as to our third issue, the relation back doctrine, I think it's fairly clear in this case that the second amended complaint which was filed would relate back to that first amended doctrine under Federal Rule 15 which permits if the underlying statute of limitation allows relation back and the recurrence or if a defendant's name is changed, if there has been notice sufficient that there is no prejudice to that defendant. In this case, you know, I know that we're dealing with plaintiffs. However, I believe that 15C as noted by the Advisory Committee extends 15C by analogy to the substitution or amendment changing a plaintiff's name. Under the Louisiana criteria for the amendment of complaints, an amended claim will relate back if it's from, again, the same conduct, transaction, occurrence as the original claim. In this case, the only change made in that second amended petition was the name of the plaintiffs. The underlying facts were not changed. The underlying claims of negligence were not changed. If the defendant knew or should have known of the new plaintiff, in this case, based on that original complaint in paragraph 67 and 68, Kelsey Abra was specifically named and it was specifically asserted that the claims were being filed on behalf of all survivors, which would include Kelsey Abra. And then if the defendant is not prejudiced. And in this case, there has been no showing that the defendants would be prejudiced by this amendment, by the simple changing of the plaintiff's names. And if the judges have no further questions for me at this time, I will cede the last few minutes of this time with maintaining my rebuttal time. Thank you, Counsel. I guess we'll begin with Mr. Kennedy. Yes, Your Honor. Robert Kennedy. I'm from Shreveport. I represent the Bossier Parish Police Jury Defendants. I will present arguments on behalf of all the defendants regarding the standing issues. I'm joined by Mr. Glenn Langley, who represents Rodney Boyer and Julian Whittington, Carl Helmers at the end, who represents Dr. Anita Fly, Dr. Russell Roberts, and Dr. Susan Tucker, Andre Castane, who represents the State of Louisiana and LSU. There are two, as I see it, standing issues presented for review. The first that I will address is whether Karen Abram had standing to file and then later to move to amend the original complaint and the first amended complaint. This will involve the discussion of the Summit Office Park Rule and then the 2019 decision in Nobrae. And then, time permitting, I will address the issue of whether Kelsey Abram, the plaintiff, to the timely filed original and first amended complaint. Now, the first amended complaint only made minor corrections to the original complaint. The substantive allegations are the same. Both the original and the first amended were filed within Louisiana's one-year prescriptive period. So when I refer to the original complaint, I actually include the first amended complaint in that as well. There's only two people that had standing under Louisiana law to file the original complaint. That was Kelsey Rice Abram and Madeline Abram. Kelsey was the spouse, surviving spouse. Madeline was a surviving minor child. As we learned in the third amended complaint, Reshel Morrow was the natural tutor or the Rule 17 real party in interest to assert a claim in behalf of Madeline Abram. Karen Abram conceded in her brief, and I was a little surprised to hear that just a few minutes ago, but she conceded that she did not have standing to file the original complaint in her brief. So . . . Well, just to be clear, I mean, standing is one of those words that everybody, lawyers, judges even, use sometimes confusingly, inconsistently. But I think I just heard you say that the issue here is that plaintiff doesn't have standing under Louisiana law. I think I'm just quoting you back to yourself. I think she agrees with that. Karen Abram does not have standing under Louisiana law. You need to bring in the other folks. I'm sorry, do I need to bring in the . . . I think I think there's agreement that Karen Abram does not have standing under Louisiana law, to use your words. Yes, sir. But under Nobre, you can bring in other parties when you have a real party interest standing under Louisiana law type problem. Okay, except I don't know that . . . I don't know that you can use Article . . . or Rule 17 to bring in new parties in this situation, if that's what . . . is that what I'm hearing you say? Why not? Because . . . I would have thought the whole point of Rule 17 is when you have a real party and interest problem, you can go ahead and bring in the proper real party and interest. Okay, except the party that files the original lawsuit has to have standing and constitutional standing to begin with. You didn't say constitutional standing. You said standing under Louisiana law. What's her constitutional standing problem? That Mrs. Karen Abram suffered no direct injury in this matter. You're saying the loss of her son is not a problem under constitutional law? It's not recognized through 1983. The jurisprudence says . . . If Louisiana law said the mother has standing at all times, we'd have to throw that case out for lack of Article 3 standing? If . . . no, because she would have standing then. Right. But we look to . . . Now that you've conceded that she has Article 3 standing, we agree that the problem is Louisiana law standing. That's the problem here, right? She completely lacks standing under the survivor statute. Absolutely. Right. So given that, why can't she bring in the correct party under Rule 17 in Obrey? Well, I think what you're saying is she had constitutional standing but not standing under Louisiana law. Right, and you disagree to that? No, I'm sorry, I don't agree with that. Okay, let me ask you the question again then, the same question I just asked. If Louisiana law, like Arkansas law, allowed the mother to sue, would we have to throw that case out under constitutional law? Not if Louisiana law allowed that, correct. And as I read the jurisprudence, only those who have standing to file a 1983 class . . . a under state law. That's the way I understand it. I may be wrong, but that's the way I understand it. Using Rule 17 to then substitute has a couple issues with it. One, it obviously wasn't raised in the briefing, but Rule 17 is used when there's an understandable mistake because the determination of the correct party was difficult. In this case, Kelsey Abrah was an adult. She was the spouse of Randall Abrah. There's no suggestion anywhere that anyone was confused or could be confused that Karen Abrah should have brought or had any right at all to bring a claim on behalf of Kelsey Abrah or anyone else. She couldn't be an administrator of her son's estate? She could be, but that would not give her right to assert a claim. No, but that's a different question. I'm asking you two different . . . one is, could she be the administrator of her son's estate? Whether or not she could recover on a claim, I think that's the question addressed by the survival statute. Right now, all I'm asking you is whether or not she could be an administrator on her son's estate. She could, and she was. She had been authorized by the Arkansas court. According to you, though, she'd be an administrator who couldn't bring any claims. She couldn't bring any claims on behalf of an estate which she could be administrator of. Is that what you're saying? She could not bring a wrongful death action under Louisiana law. Could she bring other claims in Arkansas? If he had a contract claim in Arkansas, could he have brought that? Could she have brought that? Probably so. I'm not an expert in Arkansas law, but . . . Couldn't the estate recover on a claim? What kind of claim? Wrongful death claim. No, sir. As administrator of the estate, she couldn't pursue the wrongful death claim, and any money paid on a wrongful death claim wouldn't go into an estate, even if it were for a minor. Correct. Not under Louisiana law, as it applies through 1983. The issue in this case is . . . Well, let me explain. Pardon? Yes, sir. I guess I'm just thinking . . . If the claim was brought on behalf of a minor, and the claim was paid, what would happen to the money? They couldn't give it to the minor, could they? If an invalid claim is brought on behalf of the minor . . . No. . . . and they pay. No. Let's say the only survivors were minors, and a claim is brought on behalf of the minors. It would have to be an adult bringing it on behalf of the minors, wouldn't it? You'd have to have a Rule 17 representative. There wouldn't have to be some kind of an estate, or a trust, or something that the money could be paid to if it was recovered on behalf of the minors? No, sir. That guardian under Louisiana law, or what we call a tutor, could recover that money, and then that money would be subject to a tutorship until the minors reached the Yes, sir. The issue is whether a person who lacks standing and files a void ab initio complaint that doesn't present an actual case or controversy can move a district court, which then lacks subject matter jurisdiction over the complaint, to amend that void ab initio complaint to add or substitute persons who do have standing. And this issue was addressed 40 years ago in the Summit Office Park case. There, the court clearly said the plaintiff never had standing to assert a claim against the defendants, and the plaintiff does not have standing to amend that complaint and control the litigation by substituting new parties. And we've cited the court to many decisions from this court as well as the district courts in the Fifth Circuit that adhere to that. What the plaintiffs appear to be arguing is that the Nobre Court implicitly recognized that Louisiana's relation back doctrine is an exception to this constitutional requirement of standing, and we don't agree with that. You know, first, one panel of the circuit can't overrule another. Second, in Nobre, the panel, because the lawyers didn't raise this issue, they just did not focus on the standing issue. They were focused on the relation back issue. And so while Nobre, we think, was decided correctly under relation back, it didn't address the standing and the standing to amend. And one of the issues that I realized in preparing for today that's not briefed in our briefs is, well, you know, Nobre relied on Giroir. Are you saying Giroir is incorrect, the Louisiana Supreme Court case in Giroir? And the answer to that is no. In Giroir, the plaintiff, the first plaintiff, the original husband of the decedent, and he had, clearly had standing, both under Louisiana law and constitutional standing, to bring that claim. And so we didn't have the issue that we have in Giroir and in this case, where we have someone who has absolutely no right to bring this claim, bringing the claim, and then trying to, after the prescription has run, claim that she's entitled to amend this complaint to add someone who does have standing. And in Hernandez v. Smith, which was decided after Nobre, you know, the court appears to have relied on certainly the summit office park rule to conclude that that person didn't have standing. And under the summit office park rule, this case is very similar. Karen Abraha had no cause of action against the defendants. There was no way in which Karen Abraha could amend the original complaint to give her a cause of action. As far as the second and third amended complaint, those will not assist Karen Abraha at all. They do her no good whatsoever. And so she clearly was without power to amend this original complaint, which we contend was void ab initio when it was filed, and the court did not have jurisdiction, subject matter jurisdiction, over this case, and that all it could do, which is what it did, was dismiss the case. And then the new parties, just like the summit office park case held, the new parties that were added to this lawsuit, they have no standing, obviously, to amend that complaint, because they weren't parties to begin with. Again, I want to make sure I want to emphasize the, we cited the Williams v. Bradshaw case, which is an Eighth Circuit case, and I know it's not binding precedent, but it's very similar facts. And there, you know, I was struck by one of the things the court said, which was, but bringing a claim on a person's behalf, and having that person bring the claim on his or her own behalf, are two very different things. And what we have here is the plaintiff, Karen Abraha, saying, I brought this claim on behalf of Kelsey, and certainly Kelsey's mentioned in the complaint, and as the district court found, that doesn't make her a party. She's just one of the drivers. But bringing a claim on behalf of someone you have no right to bring that claim on behalf of, and naming her in the lawsuit, that doesn't give either of these parties standing. It doesn't make her a party, I'm sorry, it doesn't make her a party to the lawsuit. Obviously, Kelsey Abraha had standing, and could have brought the suit if she had done so timely. There's an issue, just briefly, about whether or not, again, whether or not Kelsey Abraha was a party to the lawsuit. If you look at just the second amended, or the motion for leave to file a second amended complaint, if you, you know, that's at pages 393 through 395 of the record, it's clear that Kelsey Abraha was not a party to the original petition. The motion to amend the second amended petition identifies a single plaintiff, which was Karen Abraha. It then says that one of the reasons we wanted to amend the lawsuit is to substitute Karen Abraha, which again brings us back into the Rule 17 issue. Can you use Rule 17 to amend a complaint to add someone as a representative of a party when that party never, that person never had any right, and there was no confusion, there was no mistake about whether she had that right. She never had that right. Karen had been appointed administrator before she filed on behalf of the mine. Administrator of the estate of the decedent. On behalf of, of Randall's estate. Yes, sir. And that's, and that's, that's pled properly, and, and, and we have seen those documents, so we believe that to be the case. So that case is still alive? The case. The case brought by Karen on behalf of the estate. Except that the estate has no cause of action under Louisiana law, why not? So accordingly, I don't believe she has standing, either constitutional or otherwise, to bring that claim. The estate has no wrongful death claim? No, sir. No, sir. And, and I may have misspoke just a second ago when I, the, the Karen Abraha was not added, or, I'm sorry, Madeline Abraha was not mentioned in the first original complaint or the first talk about all survivors. We didn't know anything about Madeline until, Madeline Abraha until the second amended complaint was filed. When did you know about Kelsey Abraha? She was in the original complaint. She was mentioned. She's mentioned on, I think it's paragraph 64. So you immediately filed a motion to dismiss as to Karen? Yes. Yes, we, we obtained a short extension of time to look at things, but this suit was filed, I think, three or four days before prescription ran. I mean, this is not a case we hid behind the log and waited for this. I mean, we, we timely apprised everyone of this issue, but, but because they had waited until the 11th hour, there was nothing they could do. Thank you. Thank you, Your Honors. Mr. Castang? Castang. Closer than most people know. Good morning, Your Honors, and may it please the Court. You may take your mask off so we can hear you better. I think I'm just used to it these days. Thank you. Good morning, Your Honors. My name is Andre Charles Castang. I represent the LSU Board of Supervisors, the Louisiana Office of Risk Management, which is the state's self-insurance fund, and I represent Dr. Roberts to the extent that he's an LSU employee. I'm going to, in my brief two minutes, address the sovereign immunity issue. In their original 12B motion, LSU and the Office of Risk Management asserted their vote. That is an alternative jurisdictional argument, not merely an alternative argument. It was properly raised. It is supported by the record. The plaintiffs do not contest that LSU or the Office of Risk Management are arms of the state of Louisiana, alter egos of the state, entitled to the state's sovereign immunity. They did not raise any abrogated state sovereign immunity on these claims, which are 1983 claims and state law claims. The only issue is the waiver issue. A waiver has to be clear and express. The cases are very clear and express on that. The two arguments they raise involve that do not show a clear and express waiver. The contract between LSU and the jail does not just, at most, talks about a hold harmless agreement and says absolutely nothing about waiving sovereign immunity, waiving sovereign immunity in federal court. The LSU's conduct, not ORM's conduct, but LSU's conduct in other litigation does not have any bearing on this. I ask the court affirm, affirm in the brief, ground the other defendants' raises, more than good for us as well. If the court has any questions. Thank you. Thank you, counsel. Mr. Helmuth. Good morning, Your Honors. My name is Carl Helmuth. I represent Drs. Tucker, Fly, and Roberts. I don't have a lot to add. I was going to address, to some extent, the issue about whether Kelsey Abra is properly identified as a plaintiff in the original complaint or any complaint that was filed prior to the time that the case was prescribed. If you look at the caption, if you look at the parties who are identified, there is nowhere in the entire complaint that you could fairly identify her as a proper plaintiff in the case. The only plaintiff that's identified in the entire complaint is written in the singular. It's always written as to Karen Abra, who under Louisiana law would have no claim whatsoever, and there's no dispute about that. The only person who's going to have the claim is the surviving spouse and then the child. Under Louisiana law, an administrator or administratrix cannot file a claim or recover a claim on behalf of an estate, be it wrongful death or survival under any circumstances. What was Tucker's official capacity? Dr. Tucker works as one of the, she doesn't really have an actual official capacity. She does not run the program, similar to Dr. Fly. Both of them provide psychological care during the context of it. Dr. Tucker does have a contract with the organization that she is paid on a per patient basis, and she also does some additional work, but she does not set the policy. She has the contract through the state, as I recall, Your Honor, not directly through the ORM. But in any event, the court's already addressed and asked questions as it relates to the standing issues that were addressed by Mr. Kennedy. In the event there are any additional questions, I think I'm done. Thank you, guys. Thank you. Rebuttal. Thank you, Your Honor. Just briefly, in rebuttal, the appellees have argued that Rule 17 would not apply in this case. I think Nobre makes it clear that because these newly added parties both the spouse and the minor child were noted in that original petition, they are real parties in interest. I believe that that would apply under Nobre to allow this Second Amendment amended complaint. Do we have to address the Rule 17 issue on appeal? I do not believe so, Your Honor. I can only assume the district court in the, hypothetically, in the event of sending it back, would dutifully follow Nobre. There's no reason to believe that she wouldn't. In this case, the district court relied upon the summit case and tried to distinguish the case from Nobre because Nobre did not directly address the issue of standing. The appellees have Your point is, if we were to find that there is Article 3 standing and then send back the rest, that that would be appropriate. Rule 17 and Rule 15 can be analyzed. I believe so, Your Honor. I believe that that would be appropriate. Okay, just hypothetically. I just want to note very quickly that in the Nobre case, the children who were added in that First Amendment petition were not mentioned anywhere in the complaint, the original complaint. In that case, the court, this court, found that the prison records listing the two children were sufficient to notify the defendant prison of the identity and existence of those children. In this case, it's much more clear because Kelsey Obra was noted as a survivor, specifically by name, within that original complaint. That is all I have, Your Honors. We just respectfully request that this court reverse the district court's granting of the defendant's motions to dismiss. Thank you, Your Honors. Thank you, Counsel. The court will take the matter under advisement. This concludes those matters which are set for oral argument today.